IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DAVID LEVERT TIMMONS

      Petitioner,

v.

UNITED STATES OF AMERICA,

      Respondent.

CIVIL ACTION NO. 05-0080-CG

CRIMINAL ACTION NO. 02-00047

REPORT AND RECOMMENDATION [1]

This cause comes before the court on the following: petitioner's Motion to Vacate, Set Aside or

Correct Sentence pursuant to 28 U.S.C. § 2255 and brief in support (Docs. 65, 66); petitioner's

motion for judicial notice (Doc. 67); petitioner's motion to amend petition (Doc. 70) and motion to

supplement amended petition (Doc. 71); petitioner's supplement to amended petition (Doc. 74); the

United States' response to petitioner's motion to vacate (Doc. 75); petitioner's motion to amend exhibit

(Doc. 76); petitioner's motion for leave to file reply to the government's response to the motion to

---

[1] On July 5, 2005 Chief District Judge Callie V.S. Granade referred this matter to the undersigned Magistrate Judge for entry of a Report and Recommendation. The undersigned has reviewed the petitioner's motion and related documents, the transcripts of the guilty plea hearing and the sentencing hearing, and all other relevant documents in the court's file and has fully familiarized itself with the proceedings before Chief Judge Granade. Based on that review, the undersigned makes the following report and recommendation.

1

vacate (Doc. 77) [2] and petitioner's reply to the government's response in opposition to the motion to

vacate (Doc. 78).

This matter is now ripe for resolution and has been referred to the undersigned for entry of a

report and recommendation as to the appropriate disposition of the issues in the petition.

After careful review of the record, it is the recommendation of the undersigned that petitioner's motion

to vacate be **DENIED.**

I.      Background [3]

On or about March 26, 2002, petitioner, David Levert Timmons was indicted in the Southern

District of Alabama on a charge of felon in possession of a firearm in violation of 18 U.S.C. § 922

(g)(1). [4]  (Doc. 1)

_____

[2]  Petitioner's motion to file a reply to the government's response in opposition to the motion to
vacate is **GRANTED.**

[3]  The facts of this case, as set forth in the Pre-Sentence Investigation Report ("PSR") are, in
sum, as follows:

> Defendant was under investigation by the Alabama State Office of Probation and
> Parole (AOPP), the FBI's Mobile Violent Crimes Task Force (MVCTF) and the
> Bureau of Alcohol, Tobacco and Firearms, (ATF) for an outstanding parole violation
> warrant.  Upon arriving at defendant's last known address agents were granted entry to
> the residence by a female who indicated the defendant was in the bedroom.  Officers
> observed defendant standing in the hallway of the residence. Upon seeing the officers
> defendant retreated toward the back bedroom claiming he needed to get his clothes.
> At this point defendant was arrested and placed in handcuffs.  Pursuant to the arrest the
> officers then conducted a search of the home and found a 12-gauge shotgun, a .22
> caliber rifle and assorted ammunition in the only bedroom containing men's furnishings.

(Doc. 65, Exhibit G)

[4]  Section 922 provides, in pertinent part:

On April 17, 2002, Carlos Williams, Esq., from the Office of the Federal Defender, was appointed to represent Timmons.  (Doc. 9) An Order on Arraignment was entered and the matter was set for jury selection and trial on June 3, 2002.  (Doc. 10)  On May 24, 2002 the court granted defendant's motion to continue and the trial was continued to the July 2002 term.  (Doc. 22)

Thereafter, on June 27, 2002, defendant entered into a plea agreement with the government wherein defendant agreed to plead guilty to count one of the indictment. [5]  (Doc. 24)  On June 28, 2002 the court conducted a change of plea hearing where defendant's plea of guilty was accepted and the court informed defendant that he faced a maximum mandatory sentence of ten (10) years imprisonment. (Transcript, Vol. 2)  Sentencing was scheduled for September 13, 2002 pending the

———————————————

(g) It shall be unlawful for any person--

(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

...

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. §922 (g).

[5]  The single count indictment charges defendant as follows:

[H]aving been convicted of a crime punishable by imprisonment for a term exceeding one (1) year, to-wit: Criminal Mischief, First Degree, on October 26, 1995, in the Circuit Court of Mobile County, Alabama, Case No. CC95-2347, did knowingly possess, in and affecting commerce, firearms, namely a Winchester 12 gauge shotgun, serial number L1828651 and a Marlin .22 caliber rifle, serial number 01304945.

(Doc. 1)

3

court's receipt of the Presentence Investigation Report ("PSR").  (Id.) [6]

The presentence report reflected that defendant had three (3) prior burglary convictions, which mandated that he be sentenced as a armed career criminal pursuant to 18 U.S.C. §924 (e) to a minimum mandatory prison term of fifteen (15) years. [7]  In response to the presentence report, the defendant moved the court to either sentence defendant to the maximum ten (10) years set forth in the plea agreement, or in the alternative, to allow defendant to withdraw his plea agreement.  (Docs. 26, 30)  At the September sentencing hearing the court formally advised defendant that he would be subject to a mandatory minimum sentence of fifteen (15) years imprisonment as a career armed felon and advised defendant that he would be allowed to withdraw his guilty plea.  (Transcript, Vol. 3) [8]

_____

[6]  In support of his motion to vacate, petitioner has attached as an exhibit a copy of the presentence investigation report.  (Doc. 65, Exhibit G) The court is unclear whether this exhibit represents the complete PSR.

[7]  Section 924 provides, in pertinent part, as follows:

(e)(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e).

[8]  Counsel for defendant argued that the court should sentence defendant according to the plea agreement and asked for additional time to research the issue and submit a brief to the court.  Counsel for defendant argued, in sum, that the court was without "the authority to compel [Timmons] to withdraw his guilty plea" and questioned whether "advising him of the maximum that would have been applied...after an adjudication of guilty, corrects the problem."  (Transcript, Vol. 3 at 3).

4

THE COURT: Mr. Timmons, at the time you entered your guilty plea, neither your attorney nor the United States Attorney was apparently aware of the fact that your prior criminal record would qualify you for treatment as an armed career criminal under the law.  As an armed career criminal, your sentence is greater, your potential sentence is greater, than that stated to you as a maximum possible sentence at the time you entered your guilty plea..

As a matter of fact, the minimum mandatory under the armed career criminal statute is 15 years to life.  Now, at the time you pled guilty, you had understood that 10 years would be the minimum mandatory.

...

At this point in time the Court is convinced that the law in this circuit is that that is the sentence that would have to be imposed in this case.  So, in order to do that, I would have to allow you at this point in time the opportunity to withdraw your plea.

(Transcript, Vol. 3 , pp. 2-3)

Defendant subsequently filed a motion to withdraw his plea, which was granted by the court, and the case was set for jury selection and trial on December 2, 2002.  (Docs. 36, 37, 41) On the day of jury selection, counsel for defendant filed a motion to suppress on the grounds that defendant was subjected to a warrantless search of his home in violation of his constitutional rights.  (Doc. 43)  The court denied the motion as untimely and thereafter defendant and the government entered into a *second* plea agreement.  (Docs. 43, 44)  The court accepted defendant's *second* guilty plea and set a sentencing hearing for March 19, 2002.  (Doc. 42; Transcript, Vol. 4)

On March 19, 2003 Chief District Judge Callie V.S. Granade sentenced defendant to a term of imprisonment of 188 months.  (Doc. 50; Transcript, Vol. 5)  Defendant filed a Notice of Appeal on March 20, 2003 on the grounds, in sum that (1) the district court erred in accepting his guilty plea since his "factual proffer did not establish that the firearms traveled in interstate commerce, as required under

5

§922(g), but only established that he possessed firearms 'in and affecting commerce'" and (2) the

district court abused its discretion in denying his motion to suppress.  (Docs. 51, 60)  On November

17, 2003, the Eleventh Circuit Court of Appeals affirmed petitioner's conviction and sentence in an

unpublished memorandum opinion.  (Doc. 60); United States v. Timmons, 88 Fed.Appx. 386 (11th Cir.

2003) (Table)

On February 10, 2005 petitioner filed the instant motion seeking an order from the court

vacating, or setting aside the conviction and sentence pursuant to 28 U.S.C. § 2255 on the grounds, in

sum, that he (1) "received ineffective assistance of counsel during plea negotiations in violation of the

Sixth Amendment" and (2) "received ineffective assistance of counsel when counsel failed to file a

motion to suppress in a timely fashion."  (Doc. 66 at pp. 3-4)  On February 22, 2005, petitioner filed a

motion to amend his original Section 2255 motion wherein he argues, in sum, that his base offense level

was set at an incorrect amount.  (Doc. 70)  On March 28, 2005, petitioner filed a motion to

supplement his amended motion in support of his allegation that his counsel was ineffective for failing to

investigate his criminal history, wherein he maintains that his prior state court burglary convictions are

not violent crimes for armed career criminal status.  (Doc. 71) On May 9, 2005 petitioner filed a

petition to supplement his § 2255 motion, in support of his allegation that counsel was ineffective for

failing to file a motion to suppress.  (Doc. 74)  The government filed its response to the petitioner's

motion to vacate on May 12, 2005, arguing, in sum, that petitioner's motion is due to be denied since

he is unable to show that he suffered prejudice as a result of his counsel's performance.  (Doc. 75)

Thereafter, on May 31, 2005, petitioner filed a reply to the government's response.  (Id.)

II.    Habeas Standard

Habeas relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." United States v. Frady, 456 U.S. 152, 165 (1982). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Id. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. Addonizio v. United States, 442 U.S. 178, 185 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. ... A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." Moore v. United States, 598 F.2d 439, 441 (5th Cir. 1979). [9]

In general, claims not raised on direct appeal may not be considered on collateral attack. A petitioner can, however, overcome his procedural default of claims not raised on direct appeal. The burden a petitioner must meet differs, depending upon the type of claim he raises. First, "non constitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in the miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." Burke v. United States, 152 F.3d 1329, 1331 (11th Cir. 1998) (citations and internal quotations omitted). A petitioner's burden with regard to constitutional claims not presented on direct appeal is slightly less stringent. Constitutional claims may be considered if the petitioner can "show cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors." Cross v. United States, 893 F.2d 1287, 1289 (11th Cir. 1990).

---

[9] In Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Jurisdictional issues, however, are not subject to procedural default because federal courts are of limited jurisdiction and the parties cannot by waiver or default confer a jurisdictional foundation that is otherwise lacking.  Harris v. United States, 149 F.3d 1304, 1307 (11th Cir. 1998). [10]

III.     Analysis

Petitioner moves the court to vacate or set aside his conviction and sentence on the grounds, in sum, that he (1) "received ineffective assistance of counsel during plea negotiations when counsel failed to conduct an adequate pre-trial investigation"; (2) "received ineffective assistance of counsel during plea negotiations"; (3) "received ineffective assistance of counsel when counsel failed to file a motion to suppress in a timely fashion"; and (4) received ineffective assistance of counsel regarding the calculation of his guidelines.  (Docs. 65, 66)

In order to establish ineffective assistance of counsel, a petitioner must show that his attorney's performance was deficient *and* that the deficiency was prejudicial.  Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  However, it is well settled that mere "[c]onclusory allegations of ineffective assistance are insufficient" to meet petitioner's burden in this regard.  Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (quoting United States v. Lawson, 947 F.2d 849, 853 (7 th Cir. 1991)).

In Strickland, the United States Supreme Court outlined the elements to be considered when conducting an analysis of an ineffective assistance of counsel claim:

--------

[10]  In the present case, petitioner failed to raise his ineffective assistance of counsel claims on direct appeal.  However, the United States Supreme Court has held that claims of ineffective assistance of counsel are cognizable under § 2255 regardless of whether they could have been raised on direct appeal.  Massaro v. United States, 538 U.S. 500, 509, 123 S.Ct. 1690, 1696, 155 L.Ed.2d 714 (2003)

> First, the defendant must show that counsel's performance was deficient.  This requires
> showing that counsel made errors so serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the
> deficient performance prejudiced the defense. This requires showing that counsel's errors were
> so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.  Thus, a successful habeas petitioner must demonstrate that his attorney's

performance fell below "an objective standard of reasonableness," (the performance prong) id. at 688,

and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different" (the prejudice prong).  Id. at 694.

Under the performance prong of Strickland, the petitioner must establish that his counsel

performed outside the wide range of reasonable professional assistance and made errors so serious that

he failed to function as the kind of counsel guaranteed by the Sixth Amendment. 466 U.S. at 687-89.

The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his

attorney prejudiced the defense.  Id.  In order to establish prejudice, a petitioner must show "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different." Id. at 694.  A "reasonable probability is a probability sufficient to undermine

confidence in the outcome." Id.  "[P]etitioners must affirmatively prove prejudice because '[a]ttorney

errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are

to be prejudicial.  [T]hat the errors had some conceivable effect on the outcome of the proceeding' is

insufficient to show prejudice." Gilreath v. Head, 234 F.3d 547, 551 (11th Cir.2000) (alteration in

original) (quoting Strickland, 466 U.S. at 693, 104 S.Ct. at 2067).

In order to succeed on a claim of ineffective assistance of counsel, a habeas petitioner must

satisfy *both* prongs of the Strickland test.  Butcher v. U.S., 368 F.3d 1290 (11th Cir. 2004).

Consequently, the court need not "address both components of the inquiry if the [petitioner] makes an

insufficient showing on one." 466 U.S. at 697; Duren v. Hopper, 161 F.3d 655, 660 (11th Cir.1998)

("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong")

This is a heavy burden for a petitioner and the Eleventh Circuit has opined that successful

ineffective assistance of counsel claims will be a rarity.  See  Rogers v. Zant, 13 F.3d 384, 386 (11th

Cir. 1994).  In Rogers the Court opined, in part:

> When reviewing whether an attorney is ineffective, courts should always
> presume strongly that counsel's performance was reasonable and
> adequate. ... Even if many reasonable lawyers would not have done as
> defense counsel did at trial, no relief can be granted on ineffectiveness
> grounds unless it is shown that no reasonable lawyer, in the
> circumstances, would have done so.  This burden, which is petitioners'
> to bear, is and is supposed to be a heavy one.  And, we are not
> interested in grading lawyers' performances; we are interested in
> whether the adversarial process at trial ... worked adequately.
> Therefore, the cases in which habeas petitioners can properly prevail on
> the ground of ineffective assistance of counsel are few and far between.

13 F.3d at 386(internal quotations and citations omitted); see also Chandler v. United States, 218 F.

3d 1305, 1313 (11th Cir. 2000) quoting Strickland, 104 S.Ct. at 2067 ("We recognize that

'[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or

even brilliant in another.'"); Bolender v. Singletary, 16 F.3d 1547, 1557 (11th Cir. 1994) ("It is

important to note that judicial scrutiny of an attorney's performance is appropriately highly deferential

because the craft of trying cases is far from an exact science; in fact, it is replete with uncertainties and

obligatory judgment calls.")

The Eleventh Circuit has further noted :

> The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial....  We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001)(citing White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992)).  An attorney's performance is strongly presumed to have been reasonable, and must not be examined with the aid of hindsight.  Messer v. Kemp, 760 F.2d 1080, 1088-89 (11th Cir.), cert. denied, 474 U.S. 1088, 106 S.Ct. 864, 88 L.Ed.2d 902 (1986).  Therefore, a federal court must accord "a heavy measure of deference to counsel's judgments."  Singleton v. Thigpen, 847 F.2d 668, 670 (11th Cir.), cert. denied, 488 U.S. 1019, 109 S.Ct. 822, 102 L.Ed.2d 812 (1989) (quoting Strickland, 466 U.S. at 691, 104 S.Ct. at 2066).  Finally, an ineffective assistance of counsel claim is examined under the "totality of the circumstances."  House v. Balkcom, 725 F.2d 608, 615 (11th Cir.), cert. denied, 469 U.S. 870, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984).

In the present case, petitioner challenges his counsel's performance in the context of the guilty plea negotiations.  The Supreme Court of the United States has held that the two pronged Strickland test also applies to challenges to guilty pleas based on claims of ineffective assistance of counsel.  Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed. 2d 203 (1985).  Accordingly, in order to succeed on an ineffective assistance of counsel claim in the context of a guilty plea, a petitioner must establish *both* of the following: (1)  that his counsel's challenged acts or omissions made counsel's overall performance fall below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's errors, petitioner would not have pleaded guilty and would have insisted on proceeding to trial.  Id. at 58-59.

With this legal framework in mind, the court now turns to petitioner's specific claims of ineffective assistance of counsel.

A.    Pretrial Investigation

Petitioner first alleges that he "received ineffective assistance of counsel during plea negotiations when counsel failed to conduct an adequate pre-trial investigation." (Doc. 66 at 5)  Specifically, petitioner argues that his counsel "failed to interview any relevant witnesses prior to coaxing the petitioner into accepting a plea, meaning that potential defenses to the instant charges were not examined" and that counsel "failed to properly examine the ramifications of a plea agreement." Id. Petitioner maintains that "had counsel done the proper amount and type of research, the Petitioner would obviously have proceeded to trial" and that counsel's failure to do so "basically handcuffed the petitioner into accepting a plea, a plea which counsel did not know the consequences." (Doc. 66 at 7) In support of his motion, petitioner has submitted the affidavits of his wife and stepdaughter who were home at the time of petitioner's arrest. (Doc. 65, Exhibits H, J) Both women maintain that petitioner's counsel did not attempt to interview them regarding the circumstances surrounding petitioner's arrest. (Id.)

The government counters that petitioner's case was relatively simple - - agents arrived at petitioner's residence to execute a warrant for violation of probation and discovered guns and ammunition in petitioner's bedroom. (Doc. 75)   The government further argues that petitioner admitted guilt in his plea colloquy and has failed to "identify any possible defenses to the crime or identify any witnesses who would establish any type of defense. " (Doc. 75 at 8)

The record reflects that officers executed a warrant for petitioner based on an outstanding

parole violation and that, incident to the arrest, the officers discovered guns and ammunition in petitioner's possession. (Doc. 42) Moreover, the record reflects that petitioner admitted to the arresting officers that the firearms and ammunition belonged to him. (Doc. 60) [11]

Petitioner's allegations are vague and conclusory and are insufficient to support his claim of ineffective assistance of counsel. Petitioner has failed to show that his counsel's conduct fell below an objective standard of reasonableness or that he suffered prejudice as a result of his counsel's actions. Accordingly, petitioner's claim of ineffective assistance of counsel for failure to conduct an adequate pretrial investigation is without merit.

B.    <u>Voluntary Plea</u>

Petitioner next alleges that he "received ineffective assistance of counsel during plea negotiations when counsel induced a plea based on incorrect information regarding sentence length." (Doc. 66 at p. 7) Specifically, petitioner alleges that "counsel led [him] to believe that based on his criminal history the most time he could receive would be 120 months, with a guideline range of 37 to 57 months." (Doc. 66 at p. 10) Petitioner argues that he "was obviously prejudiced by [counsel's] conduct, as he received a much greater sentence than that promised to him by his attorney" and, as a result, his plea was not knowing, voluntary and intelligent. (Doc. 66; Doc. 78 at 5)

---

[11]  At the sentencing hearing in March 2003 petitioner addressed the court, in pertinent part as follows:

> [A]s far as the guns are concerned, I never had them with the intentions of doing anybody any bodily harm or robbery or nothing like that....And I took the guns from my nephew to keep him out of trouble actually. And that's how I ended up with the guns.

(Transcript, Vol. 5, p. 5)

In response the government concedes that although the first plea agreement was based on incomplete information regarding petitioner's criminal history, such was not the case with the second plea agreement which petitioner "chose to enter...with his eyes wide open."  (Doc. 75 at 8)

In Pardue v. Burton, 26 F.3d 1093 (11th Cir. 1994), the Eleventh Circuit held:

> To be valid, a guilty plea must be made voluntarily and with full knowledge of the consequences. Boykin v. Alabama, 395 U.S. 238, 241-42, 89 S.Ct. 1709, 1711-12, 23 L.Ed.2d 274 (1969). Because a plea of guilty "is a conviction," anything less than an "affirmative showing" that it was made intelligently and voluntarily amounts to plain error. Id. In Coleman v. Alabama, 827 F.2d 1469, 1473 (11th Cir.1987), we recognized that the protections set forth in Boykin require that an accused "have information concerning the range of punishment prescribed by the act to which he may be sentenced.

Id. at 1096.  Thus, in order to determine that a guilty plea has been made knowing and voluntary, the court must establish the following:  "(1) the guilty plea [is] free from coercion; (2) the defendant ... understand[s] the nature of the charges; and (3) the defendant ... know[s] and understand[s] the consequences of his guilty plea." U.S. v. Frye, 402 F.3d 1123, 1127 (11th Cir. 2005) quoting United States v. Mosely, 173 F.3d 1318, 1322 (11th Cir.1999).

A defendant, by offering a guilty plea, admits to all of the elements of a formal criminal charge, and waives all non-jurisdictional defects in the proceeding.  United States v. Jackson, 659 F.2d 73 (5th Cir.1981).  ' "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.'"  Bousley v. United States, 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (quoting Mabry v. Johnson, 467 U.S. 504, 508, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984) A guilty plea may be set aside only if it fails to satisfy due process.  Thus, if a defendant understands the charges levied against him, understands the

consequences of the guilty plea and voluntarily chooses to plead without being coerced to do so, the

guilty plea will be upheld on habeas corpus review.  Stano v. Dugger, 921 F.2d 1125, 1141 (11th

Cir.1991).

Petitioner argues that he was prejudiced since he received a much greater sentence than that

promised to him by his attorney.  (Doc. 66)  While it is true that the original plea was based on an

inaccurate sentencing range, any misconception petitioner may have harbored regarding the possible

length of his sentence was rectified *prior* to petitioner's second guilty plea and subsequent sentence.

As noted herein, petitioner was allowed to withdraw his first guilty plea after it was determined through

the PSR that petitioner qualified for sentencing as an armed career felon.  (Transcript, Vol. 3)

Thereafter the case was set for trial and on the day of jury selection petitioner entered into a second

plea agreement with the government *with the full knowledge* that he would be sentenced to a fifteen

(15) year minimum mandatory term of imprisonment.  At the second guilty plea hearing, the court *again*

advised defendant there was a minimum mandatory of fifteen (15) years up to life imprisonment, a

$250,000 fine and SRT of 5 years. (Transcript, Vol. 4, p. 6)  Petitioner stated under oath that he was

not coerced or induced into entering into the plea agreement, that he entered into the agreement of his

own free will, that he understood the charges against him and the consequences of his plea.  (Id. at 5)

Petitioner's representations in this regard constitute "a formidable barrier in any subsequent collateral

proceedings.  Solemn declarations in open court carry a strong presumption of verity."  Blackledge v.

Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 52 L.Ed. 2d 136 (1977); United States v. Butt, 731 F.2d

75, 80 (1st Cir. 1984) ("[T]he presumption of truthfulness of [defendant's] Rule 11 statements will not

be overcome unless the allegations in the §2255 motion...include credible, valid reasons why a

15

departure from those earlier contradictory statements is now justified.")        Petitioner's own

statements in the record belie his contentions that his plea was not voluntary and knowing. See

Bradshaw v. U.S., 2005 WL 1669036 * 4 (M.D. Fla., July 12, 2005) (slip opinion) ("Petitioner

cannot circumvent the terms of his plea agreement merely because he does not like the outcome at

sentencing.") citing U.S. v. Bushert, 997 F.2d 1343, 1350 (11th Cir. 1993).  Accordingly, petitioner

cannot now claim that he was misled by prior contradictory statements allegedly made by counsel or

contained in the first plea agreement.   "[A] good faith but erroneous prediction of a sentence by a

defendant's counsel does not render the guilty plea involuntary." Johnson v. Massey, 516 F.2d 1001,

1002 (5th Cir. 1975); Spinelli v. Collins, 992 F.2d 559, 561 (5th Cir.1993) (Unfulfilled subjective

expectations of counsel and a defendant regarding the possible length of sentence do not render an

otherwise valid plea involuntary.)  See United States v. Bjorkman, 270 F.3d 482, 502-503 (7th

Cir.2001) (having been informed of correct sentencing parameters by the court precluded petitioner

from contending that he pled guilty based on counsel's alleged alternative characterization of sentencing

possibilities); U.S. v. King, Slip Copy, 2005 WL 1224610, *1 (S.D.Ala., May 23, 2005) ("Because

petitioner was informed of the correct sentencing range at the guilty plea hearing, he cannot now claim

that he was misled by prior contradictory statements allegedly made by counsel or in the plea

agreement.")

        The record reflects that petitioner's plea was entered into knowingly and voluntarily.  Petitioner

has failed to show that his counsel's conduct was objectively unreasonable or that he suffered prejudice

as a result.  Accordingly, petitioner's claim is without merit.

        C.      Failure to File A Motion to Suppress

Petitioner next maintains that his counsel was ineffective for failing to timely file a motion to suppress evidence obtained by the officers during his arrest.  (Doc. 66 at 11) Specifically, petitioner maintains that despite his request for counsel to investigate the circumstances surrounding his arrest, counsel failed to do so and failed to file a motion to suppress "until the very last minute."  (Doc. 66 at 23)  Petitioner further asserts that his counsel "admitted to not one, but on three difference occasion's of neglecting to investigate and raise the Petitioner's concern's of the police illegal conduct."  (Doc. 78 at 2)

First, it is important to note that petitioner engages in a gross mis-characterization of counsel's comments to the court.  Regarding the untimely filing of the motion to suppress, the following exchange occurred between counsel for petitioner and the court during the guilty plea hearing:

MR. WILLIAMS:     Your Honor, I would just like to say one other thing on the record regarding the late filing of the motion to suppress.  As I had indicated earlier, I twice considered that issue and rejected it when this case was on its first round and again in the second round.  And yesterday I met with Mr. Timmons again, and we went over that issue again.  And it is then that one argument crystalized for me, and so I filed it this morning based on that .  But I admit it was filed late.

(Transcript, Vol. 4, p. 11)  Petitioner's counsel again addressed the issue at the sentencing hearing in support of his motion to withdraw from representation of defendant [12]:

MR.WILLIAMS:     Okay. Well, Your Honor, as I explained, I had reviewed a case - - I think it was Tony - United States – I mean, it's a state case.  Tony is what I remember of it.  And I had essentially discarded that as a basis.  And it was only after looking closer at the particular document involved that I felt, well, maybe there was a chance, that there may be something. ...

(Transcript, Vol. 5, p. 8)

---

[12]  Chief Judge Granade granted counsel's written motion to withdraw on March 31, 2005. (See Docs. 52, 53)

17

Contrary to petitioner's claims, the record reflects that his trial counsel engaged in a thorough investigation regarding the merits of a motion to suppress.  In fact, counsel noted that he had researched the issue and had previously considered and rejected the idea of filing a motion to suppress on two prior occasions. [13]  "There is a strong presumption that trial counsel's conduct is the result of trial strategy, and 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" Sinclair v. Wainwright, 814 F.2d at 1519 (quoting Strickland, 466 U.S. at 690, 104 S.Ct. at 2066).  "[T]he filing of pre-trial motions 'falls squarely within the ambit of trial strategy.' " Schwander v. Blackburn, 750 F.2d 494, 500 (5th Cir.1985) (quoting Murray v. Maggio, 736 F.2d 279, 283 (5th Cir.1984)).  See also Bolender v. Singletary, 16 F.3d at 1573 (the failure of counsel to raise a meritless claim does not constitute ineffective assistance of counsel).

Petitioner argues that "[o]nly now through due dilligent [sic] and adequate research has the petitioner relized [sic] that, he had a right to challenge the search of his home, and his car had he been made aware of his Fourt [sic] Amendment Rights and what he was given up he would have insisted on

---

[13]  In his motion to withdraw as counsel for petitioner, Mr. Williams states, in pertinent part:

On or about December 1, 2002, defense counsel filed a Motion to Suppress and the Court denied the motion because it was filed too late.  Counsel advanced that the Motion to Suppress was filed late because defense counsel had previously considered similar grounds for filing the Motion to Suppress but twice rejected the option.  *This was done after considering Federal and particularly Alabama case law on the issue which appeared dispositive.  See* Toney v. State, 572 So. 2d 1308 (Ala. 1990) However, upon further review, the Order of Probation in Timmons' case, appeared to provide a basis for the Motion to Suppress.  Given the serious penalty at stake, counsel could not ignore the possibility of a more favorable resolution and filed the motion although it was admittedly well beyond the deadline.

(Doc. 52)

going to trial." (Doc. 78 at 5-6) Specifically, petitioner maintains that "the search occurred after the petitioner was under arrest, and was of an area of the home well removed from the place of arrest, an area where petitioner retained a Fourth Amendment protected privacy." (Doc. 74 at 3)

In response to petitioner's claim the government asserts that petitioner raised a version of this same argument on direct appeal, to which the Eleventh Circuit Court of Appeals held, in part, that "[t]he failure to file a timely motion [to suppress] waives the objection absent a showing of good cause." (Doc. 60 at 6) The government further argues that by entering a guilty plea petitioner waived all non- jurisdictional challenges to the constitutionality of the conviction. (Doc. 75 at 6)

Petitioner admits that there are certain conditions under which the residence of a parolee may be searched, he argues that only his parole officer or supervisor would have authority to conduct the search. (Doc. 66 at 16) However, petitioner maintains that neither one of those individuals was present at his arrest or conducted the search of his home and that Officer Green "lead [sic] federal investigator's and other authorities to believe that he was the petitioner's Parole Officer, thereby given the impression that the search of petitioner's home and car was authorize." (Doc. 78) Petitioner further contends that no one consented to the search of his home and therefore, the "firearms seized during officer Green's search should not be allowed as evidence against the petitioner." (Id. at 16-17) Finally, petitioner argues the officers could not establish that their lives were in danger since Officer Green would have had knowledge, through N.C.I.C. records as well as through petitioner's parole officer that petitioner "had no prior history of assault, robbery, drugs or anything of that nature...and could have been reasonably assured that the Petitioner would cause no trouble." (Doc. 66 at 21)

The government concedes that while there is an insufficient record for the court to determine the

grounds for the search since petitioner failed to raise the matter before the district court "there are sufficient facts for this Court to determine that the search was permissible as a search incident to arrest." (Doc. 75 at 7)  The government maintains that petitioner is unable to show his motion would have been meritorious since petitioner asked to be allowed to go into his bedroom to retrieve clothes, at which point it "became reasonable for the officers to search the bedroom for weapons in order to protect their safety."  (Id.)

Although petitioner argues that the motion to suppress would have been meritorious, the record reflects the contrary.  First, the factual proffer in the plea agreement reflects that officers arresting petitioner in his home were concerned of a safety risk and conducted the search incident to the arrest. (Doc. 42) [14]  Secondly, the record reflects that counsel for petitioner *twice* considered filing a motion to suppress and was skeptical of the motion's merit.  Finally, while the district judge did not address the merits of the motion, she did indicate, both at the change of plea hearing and at the sentencing hearing, that "[i]t did appear...on first blush that the motion did not have much merit."  (Transcript, Vol. 5, p. 8)

Counsel's failure to file the motion in a timely manner was not objectively unreasonable given the history of this case.  Moreover, the petitioner has failed to demonstrate that the motion to suppress

_____

[14] The plea agreement incorporated a factual resume which states, in sum, that when petitioner failed to report to his probation officer as required, an arrest warrant was issued and the officers proceeded to petitioner's last known address to execute the warrant.  A female answered the officers' knock on the door and consented to the entry.  The officers confronted petitioner and became "[c]oncerned that [he] might access a weapon in the bedroom and for the safety of all in the house Probation Officer Green told [petitioner] to come to the front room which he did.  [Petitioner] was arrested.  SA Roche watched [petitioner] while Probation Officer Green went into the bedroom to retrieve clothing for [petitioner] to wear when he took him to jail and to search for weapons or contraband."  The officer discovered one firearm in the closet and another under the mattress along with ammunition.

was meritorious such that petitioner suffered prejudice from his counsel's failure to file the motion to suppress in a timely manner.   Accordingly, petitioner's claim must fail.

      D.     <u>Failure to Object to Sentencing Error</u> [15]

Petitioner further argues that the base offense level used to calculate his sentence was incorrect because he did not have the requisite two prior felony convictions.  (Doc. 70)  Specifically, petitioner argues that his sentence was "enhanced because of three prior third degree burglary conviction [sic], which the Petitioner claims were not violent crimes or crimes of violence within the meaning of 4B1.2 (1) (ii) because under the State of Alabama statute for third degree burglary, at the time the offenses took place between 1979 and 1984, third degree in the State of Alabama was typically considered a non violent offense."  (Doc. 71 at 2)  Petitioner maintains that "at the time of his prior convictions in 1979 and 1984 he was under the impression, and it was his belief, that he was not pleading guilty to any of the circumstances surrounding those crimes because...the government wasn't sure as to who actually entered the property's [sic], and the Petitioner never amitted [sic] to entering into any building, or residence at anytime."  (Doc. 71 at p. 3)

Petitioner further argues that his "Third Degree Burglaries convictions which was [sic] used as a Predicate for (ACCA) enhancements purposes was not violent crimes according to the State of Alabama statute for third degree burglary, which was a class (C) felony at the time those burglaries

_____

[15]  This claim is contained in petitioner's pleading entitled "Motion to Amend Petitioners Original 28 U.S.C. § 2255 Motion Pursuant to Petitioner Claim of Ineffective Assistance of Counsel in Support of Claim (I) Part (A) Failure to Investigate"  (Doc. 70), however in the body of the pleading petitioner argues that the "probation officer erred when applying his prior burglary convictions for armcareer [sic] criminal purposes...."  (<u>Id.</u>)  The undersigned construes the claim as one of ineffective assistance of counsel.

were committed." (Doc. 70 at 7) Petitioner contends that "minus the burglaries used to enhance

Petitioner's sentence...the appropriate sentence...would be 63 to 78 months." (Id.)

In response the government argues that petitioner is unable to show prejudice. (Doc. 75) The

government maintains that petitioner was "correctly identified as an armed career criminal under 18

U.S.C § 924(e)(2)(B)(ii) because he had three prior violent felonies." (Id. at 8) [16]  Because petitioner

was an armed career criminal and was in possession of a short-barreled shotgun, the government

argues that his sentence was properly enhanced pursuant to U.S.S.G.§ 4B1.4(b)(3)(A) to a level 34.

(Id.)

Only in limited instances may a petitioner collaterally attack his prior convictions. See Custis v.

United States, 511 U.S. 485,114 S.Ct. 1732, 1738, 128 L.Ed. 2d 517, 528 (1994). In Custis, the

United States Supreme Court held that with the exception of a defendant who has been denied counsel

under the Sixth Amendment, there is no authority allowing a defendant to collaterally attack a prior

conviction for purposes of avoiding § 924(e). Id. at 494-495. Petitioner does not allege, and there is

nothing in the record to indicate, that petitioner was not represented during his prior pleas.

Accordingly, petitioner's claim is without merit.

To the extent petitioner frames this argument as one alleging ineffective assistance of counsel,

the claim also fails. The record reflects that at sentencing counsel for petitioner objected to the status of

career offender regarding the mandatory fifteen (15) year penalty. (Transcript Vol. 5, pp. 2-3)

_____

[16]  18 U.S.C. § 924(e)(2)(B), defines a "violent felony" as any felony conviction that: "(I) has
as an element the use, attempted use, or threatened use of physical force against the person of another;
or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that
presents a serious potential risk of physical injury to another." § 924(e)(2)(B).

However, the objection was denied by the court.  (Doc. 49)  The record further reflects that petitioner

had three prior violent felony convictions, *mandating* that he be sentenced as an armed career felon.

(Doc. 49)  Petitioner has failed to establish that his counsel's conduct was objectively unreasonable or

that he suffered prejudice as a result.  Accordingly, petitioner's motion is due to be denied.

IV.    Conclusion

      In the final analysis, the undersigned finds that petitioner's arguments alleging ineffective

assistance of counsel are conclusory in nature and fail to meet either prong of the Strickland test, as set

forth herein above.  Accordingly, it is the recommendation of the undersigned Magistrate Judge that

petitioner's § 2255 petition be **DENIED.**

      The attached sheet contains important information regarding objections to this

Recommendation.

      **DONE** this the 11th day of October 2005.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES MAGISTRATE JUDGE**

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
## AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
## <u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.      **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.      **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

**KRISTI K. DuBOSE**
**UNITED STATES MAGISTRATE JUDGE**